IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KELLY RAINEY,

  Plaintiff,

v.

DR. W. BRADFORD MARTIN,

  Defendant.

OPINION and ORDER

Case No. 17-cv-05-wmc

Pursuant to 42 U.S.C. § 1983, *pro se* plaintiff Kelly Rainey is proceeding with his Eighth Amendment deliberate indifference claim against Dr. W. Bradford Martin for his alleged failure to provide effective treatment for back pain between 2014 and 2016 while Rainey was incarcerated by the Wisconsin Department of Corrections ("DOC").[1] Currently before the court is Dr. Martin's motion for summary judgment. (Dkt. #42.) Since the evidence of record does not support a reasonable finding that Dr. Martin responded to Rainey's need for treatment with deliberate indifference, the court will grant the motion and enter judgment in Dr. Martin's favor.

UNDISPUTED FACTS[2]

In November of 2014, Kelly was incarcerated at DOC's Jackson Correctional Institution ("Jackson"). Dr. Martin was working as a physician for prisoners housed there. On November

---

[1] Dr. Martin passed away on June 19, 2019, but the Wisconsin Department of Justice has continued to represent his interests in this matter, and Rainey has agreed to proceed on this basis. (Dkt. #47.)
[2] Unless otherwise noted, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence submitted in support, all viewed in a light most favorable to plaintiff as the non-moving party. Rainey's opposition materials are sparse; he did not submit a response to defendant's proposed findings of fact in accordance with this court's procedures, but instead submitted signed and notarized documents in which he argues the merit of his claim and asks for the court to appoint

1

26, Dr. Martin met with Rainey to address his complaints of back pain. Rainey reported to Dr. Martin that a provider in Kenosha told him he needed therapy and provided him opiate pain medication (Vicodin and Percocet). Dr. Martin ordered x-rays and prescribed Rainey Flexeril (cyclobenzaprine, a muscle relaxant), as well as Tylenol for his pain.

On December 3, 2014, Rainey underwent an x-ray of his lumbar spine, which showed mild osteoarthritis of the lumbar spine with L4 subluxation. As a result, on January 8, 2015, Rainey was given a low bunk restriction, which was in place until February 23, 2015. On January 12, Rainey was also seen by Nurse Kostchyz in the health services unit ("HSU") for his back pain. While Rainey asked Kostchyz for therapy and stronger pain medication, Kostchyz directed Rainey to use ice and an analgesic balm, stretch, walk and follow his recreation restrictions, meaning that Rainey should limit himself to low impact exercises. Kostchyz also educated Rainey about low impact exercises. On January 29, 2015, an Off-Site Service Request was further placed to evaluate Rainey for physical therapy and treatment.

On February 12, 2015, Dr. Martin examined Rainey again regarding his back pain. Rainey told Dr. Martin he did not want non-steroidal, anti-inflammatory drugs ("NSAIDS"), but was willing to try physical therapy. On February 19 and 20, HSU spoke with recreation staff about Rainey's report that he had been doing vigorous sit-ups, crunches, leg raises and push-ups, despite his recreation restriction. HSU staff advised recreation staff to continue to

---

an attorney. (Dkt. ##51, 52.) Rainey's only argument in support of his request for an attorney is that he is not an attorney and has mental health issues, but it is not apparent that Rainey lacks the ability to respond to defendant's proposed finding of fact or argue the merit of his claim. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). Accordingly, the court has declined to recruit counsel for Rainey, while accepting Rainey's representations in his opposition materials to be his evidence in opposition to defendant's motion, to the extent he could have personal knowledge of the facts represented.

monitor Rainey, and on February 23, Nurse Practitioner Tidquist discontinued Rainey's low bunk restriction.

On March 30, 2015, Tidquist met with Rainey about his back pain. Rainey reported a pain level of 10 out of 10 at that time, and further claimed that he could not do anything because of the pain. In response, Tidquist asked Rainey about staff's observation that he had been vigorously working out despite his low impact exercise restriction. Rainey disputed those reports, insisting that he was just stretching. Ultimately, Tidquist provided Rainey a hand-out on back pain and stretching and told him to follow up with physical therapy.

Raney attended physical therapy on April 8, 14, 20 and 27, May 13, June 22, and July 7 of 2015. On July 11, Nurse Kristine Pralle saw Rainey in the HSU for a sore throat that he claimed "came from" his ears and back. Rainey also complained of constipation, noting that when he had a bowel movement, his pain went away. Pralle told Rainey to continue stretching and not to give in to pain. She also advised him to increase fluids and good nutrition for regular bowel movements.

On August 19, 2015, Dr. Martin saw Rainey a third time for his back pain. Martin prescribed Rainey Meloxicam (7.5 mg, one tablet daily as needed) for his constipation, and continued physical therapy for his back.

Rainey participated in physical therapy on October 7, November 12 and November 30 of 2015, and January 13 and 25 of 2016. Although he was also scheduled for physical therapy sessions on October 22, December 16 and December 30 of 2015, Rainey did not show up for those appointments.

On November 8, 2015, Rainey submitted a health service request asking for help with his state issued boots, as well as reporting chronic back pain and pain shooting down his feet

and toes. He claimed that his boots worsened his back pain when he would walk or stand. An HSU nurse responded that HSU does not issue or order shoes without a doctor's order.

On February 3, 2016, Dr. Martin met with Rainey to discuss his back pain for a fourth time. Rainey reported that the pain medication, gabapentin, had not been helpful in the past,[3] and that he now had pain during bowel movements. Dr. Martin made a plan for Rainey to undergo a colonoscopy and prescribed Rainey a bulk-forming fiber laxative, Reguloid, to be taken daily for a year, as well as Tylenol 500 mg, for a year. Dr. Martin also submitted a request for Rainey to undergo a colonoscopy that same day.

On February 6, 2016, Rainey saw a nurse in the HSU about rectal pain. The nurse told Rainey that he had an order for a colonoscopy and instructed Rainey to drink plenty of fluids and take his prescribed stool softeners.

On February 21, 2016, Rainey saw an HSU nurse after he hit his elbow and complained of back pain. While Rainey wanted to go to a pain clinic, the nurse denied that request, noting that his elbow was not red or swollen, he had a full range of motion, and he walked with a normal gait. While Rainey threatened litigation if he was not sent to a pain clinic, the nurse advised him to continue physical therapy, take his prescriptions and use the analgesic balm. On February 27, Rainey was referred to physical therapy.

On March 4, 2016, Rainey underwent a colonoscopy by an offsite provider. The provider reported that Rainey's colon appeared normal. Apparently in response, Dr. Martin discontinued Rainey's meloxicam prescription on March 16 and prescribed ibuprofen for one year. Dr. Martin also renewed Rainey's order for Tylenol for one year, and he ordered Rainey

---

[3] It does not appear that Dr. Martin had prescribed this medication previously; rather, that Dr. Martin suggested it as an option and Rainey did not want to try it.

4

a "back belt" for the duration of his incarceration at Jackson. Finally, Dr. Martin noted that he saw no need for an MRI, even though Rainey requested one.

On April 6, 2016, Rainey was called to HSU because he was asking about shoes again and staff had reported that Rainey had been lifting weights with the use of his back belt. At that time, Rainey was placed on a *no* weight lifting restriction, he was asked to return the back belt, and he was scheduled for follow up with the nurse practitioner. Rainey then was asked to return to his cell, all of which made him angry. On April 8, Rainey also received physical therapy. On April 27, Dr. Martin met with Rainey because he wanted a back belt again for weight lifting. While Dr. Martin allowed Rainey to resume weight lifting, he did not order a belt for him.

On May 3, Rainey had another physical therapy appointment, and on May 5, he met with an HSU nurse about his neck, back and shoulder pain. The nurse noted that Rainey did not report pain on palpitation, and he had no swelling. The nurse also talked to Rainey about degenerative disc disease, explaining that it happens with aging and sometimes there is not a lot to do about it beyond controlling the pain and staying active. She further advised Rainey to continue with his physical therapy and provided him education on the use of muscle rub and relaxation techniques, such as meditation. Rainey was seen again in the HSU on May 13 and 15. On May 16, Rainey had a physical therapy appointment and reported that he had continued to lift heavy weights. At that point, the physical therapist decided that Rainey was no longer a candidate for physical therapy, citing Rainey's ability both to lift weights and walk to HSU without difficulty.

On June 22, 2016, Dr. Martin examined Rainey once again. After Rainey reported back pain, Martin ordered Tuli's heel cups for Rainey, while noting that he saw no evidence of

radiculopathy. Dr. Martin further noted that he had no problem with Rainey's expressed interest in getting back to exercising, but still ordered x-rays. Rainey underwent the x-rays, which showed mild to moderate loss of disc height at L3-L4 and L4-L5. While the scans showed mild retrolisthesis (displacement) of L3 and L4, there was not a significant change from his December 3, 2014, x-rays. In June and July of 2016, HSU staff continued to see Rainey for his complaints.

On August 10, 2016, Dr. Martin re-examined Rainey, and Rainey told Dr. Martin that he believed his pain problems were both physical and emotional, and he felt better when he exercises and keeps moving. Rainey also reported left shoulder pain. Dr. Martin noted that Rainey had good range of motion and excellent muscle development in his left shoulder, and his impression was that Rainey had "generalized muscle aches and pains out of proportion to the findings on physical exam." (Bachhuber Decl. Ex. 1000 (dkt. #46-1) 24.) Dr. Martin made a plan to re-check laboratory studies, including the sedimentation rate and C-reactive protein, and he ordered a left wrist x-ray. Finally, Dr. Martin planned to see Rainey again for follow-up in four weeks.

On October 6, 2016, apparently after following up with Rainey, Dr. Martin filled out a prior authorization for non-urgent care, requesting an MRI for Rainey since his back pain had persisted for 18 months. Dr. Martin also noted that Rainey's pain was worsening, which "now is associated with numbness going to the left foot." (Ex. 1000 (dkt. #46-1) 146.) Dr. Martin also requested a neurology referral, if appropriate.

Rainey underwent the MRI on October 17, 2016, which showed multilevel degenerative disc and facet disease. On October 19, Dr. Martin ordered that Rainey be seen by either Physical Medicine or Neurology at Gundersen Lutheran Hospital for his back pain and related

issues.  Martin took additional measures to address Rainey's pain between October and November of 2016:  increasing Rainey's ibuprofen prescription to 800 mg twice daily; ordering low bunk, low tier and extra pillow restrictions for six months; and cancelling the ibuprofen and ordering Naproxen for him.

On December 8, 2016, Rainey went to the Physical Medicine and Rehabilitation department at Gundersen Health.  On December 27, he met with a neurosurgeon, Dr. Jerry Davis.  Dr. Davis noted that Rainey's clinical exam was "suspect as he gave very poor effort with motor testing," but still believed that Rainey was having back and bilateral leg pain.  (*Id*. at 138.)  Therefore, Dr. Davis recommended an L3-L4, L4-L5, and L5-S1 posterior lumbar interbody fusion, noting that the surgery was not necessary, but recommended nonetheless given Rainey's hope that he would see improvement.  Rainey underwent that surgery in February of 2017 at Gunderson Lutheran Hospital.

Rainey now claims that Dr. Martin refused to provide him pain relief and inappropriately delayed ordering an MRI, causing him unnecessary pain and mental anguish.

OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406–407 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (brackets omitted).  During summary judgment, disputed facts are viewed in a light most favorable to the plaintiff as the non-moving

party; however, this treatment does not extend to inferences supported merely by speculation or conjecture. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017); *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 345 (7th Cir. 2019).

The Eighth Amendment gives prisoners the right to receive adequate medical care, *Estelle v. Gamble*, 429 U.S. 97 (1976). To prevail on a claim of constitutionally inadequate medical care, an inmate must demonstrate two elements: (1) an objectively serious medical condition and (2) a state official who was deliberately (that is, subjectively) indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). For purposes of summary judgment, defendant does not dispute that Rainey's persistent back pain constituted a serious medical need, nor could it, but rather seeks judgment on the ground that no reasonable trier of fact could find that Dr. Martin's treatment of Rainey's back condition constituted deliberate indifference.

"Deliberate indifference" means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Deliberate indifference constitutes *more than* negligent acts, or even grossly negligent acts, although it requires something less than *purposeful* acts. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The threshold for deliberate indifference is met where: (1) "the official knows of and disregards an excessive risk to inmate health or safety"; *or* (2) "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he or she draws that inference yet deliberately fails to take reasonable steps to avoid it. *Id*. at 837; *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) ("While evidence of malpractice is not enough for a plaintiff to survive summary judgment on an Eighth

Amendment claim, nor is a doctor's claim he did not know any better sufficient to immunize him from liability in every circumstance.").

A jury may "infer deliberate indifference on the basis of a physician's treatment decision [when] th[at] decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("A prisoner may establish deliberate indifference by demonstrating that the treatment he received was 'blatantly inappropriate.'") (citing *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005)). In *Petties,* the Seventh Circuit outlined categories of conduct that could support a finding of deliberate indifference in a medical setting: when a doctor refuses to take instruction from a specialist; when a doctor fails to follow an accepted protocol; when a medical provider persists in a course of treatment known to be ineffective; when a doctor chooses an "easier and less efficacious treatment" without exercising professional judgment; or when the treatment involved an inexplicable delay lacking a penological interest. *Petties*, 836 F.3d at 729-31. The court is to look at the "totality of [the prisoner's] medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Id.* at 728; *Wilson v. Adams*, 901 F.3d 816, 821 (7th Cir. 2018). For reasons explained below, no reasonable jury could find Dr. Martin handled Rainey's need for care with deliberate indifference.

Between November of 2014 and November of 2016, Dr. Martin met with Rainey about his back pain *nine* times. Further, while it is undisputed Dr. Martin did not order the MRI that led to his surgery until October 6, 2016, the record does not support a reasonable finding that Dr. Martin's delay in ordering the MRI was unsupported by legitimate reasons or that he left Rainey untreated in the meantime, much less that he was subjectively indifferent to Rainey's

9

pain. To the contrary, the record of their meetings indicates that Dr. Martin responded to Rainey's continuing complaints of back pain by adjusting the approach to pain management and attempting to identify the source of the pain. Specifically, Dr. Martin referred Rainey to physical therapy, ordered x-rays on two occasions, provided Rainey recreation and weight lifting restrictions, provided him with a back belt and heel inserts, and prescribed him various forms of pain relief, including ice, stretching and pain medications. In particular, while Rainey might take issue with Dr. Martin's failure to prescribe him opiate pain relievers, no evidence of record suggests that Dr. Martin failed to exercise medical judgment in prescribing Rainey various doses of ibuprofen, Tylenol and Naproxen. Moreover, in 2016, when Rainey's symptoms worsened, and his MRI showed his degenerative disc and facet disease, Dr. Martin first increased Rainey's ibuprofen dosage and then switched him to Naproxen in November.

Furthermore, when Rainey was complaining that he also had pain during bowel movements, Dr. Martin's decision to also prescribe him a laxative and order a colonoscopy was a reasonable reaction to identify the source of those symptoms. When the colonoscopy came back clear in March of 2016, Dr. Martin observed that an MRI did not appear appropriate, but still renewed his pain medications and prescriptions and ordered Rainey a back belt even though it was ultimately taken away because Rainey misused it. These decisions suggest that Dr. Martin was attempting to alleviate Rainey's discomfort through various means, *not* that he was needlessly delaying needed treatment.

Finally, Rainey's eventual MRI and surgery is not enough, by itself, for a reasonable trier of fact to find that Dr. Martin's decision to wait until October of 2016 amounted to deliberate indifference. Indeed, "[a]n MRI is simply a diagnostic tool, and the decision to forego diagnostic tests is 'a classic example of a matter for medical judgment.'" *Pyles*, 771 F.3d

at 411 (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)); *Lloyd v. Moats*, 721 F. App'x 490, 494 (7th Cir. 2017). More specifically, the evidence of record in this case does *not* support a finding that Dr. Martin had reason to believe Rainey needed to undergo an MRI earlier and consciously disregarded that need. To the contrary, the record suggests that Dr. Martin simply was not persuaded until October 2016 that an MRI was appropriate. Moreover, Rainey's own actions supported Dr. Martin's skepticism about his level of pain. Indeed, in early 2015 and April of 2016, Rainey continued to lift heavy weights and exercise vigorously, despite his reports of severe pain and various restrictions. Still, even though Dr. Martin noted his belief that Rainey was not reporting his symptoms accurately as late as August 2016, he scheduled him for monitoring and follow-up. Then, after examining Rainey again in October, Dr. Martin concluded that Rainey's worsening pain and reported numbness in his left leg merited an MRI and neurology referral. (Ex. 1000 (dkt. #46-1) 146.)

At that point -- when Rainey's pain had persisted for 18 months and was worsening, and he was reporting leg numbness -- Dr. Martin agreed that an MRI and neurology referral were appropriate steps. The steps leading up to that MRI order -- including the use of physical therapy, other types of imaging (x-rays and a colonoscopy) to rule out other causes of Rainey's pain, and ongoing recommendations and prescriptions for pain avoidance and management -- does not suggest Dr. Martin abandoned his professional judgment; at most, it suggests only that he needed to exclude other options to justify the MRI.

Perhaps most telling is the undisputed fact that even with the benefit of an MRI, Dr. Davis, a specialist at Gunderson Hospital, was still not convinced that surgery was necessary but agreed to recommend it given his patient's preference. Plus, Dr. Davis offered no criticisms of Rainey's treatment up to that point in time.

11

In the end, Rainey himself appears to have been the *only* person advocating for more imaging, different pain medications, or even surgery. While a patient's own subjective objections to his care and desire for different or better care are important, they do not support a reasonable finding of deliberate indifference by Dr. Martin. *See Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) (while a prisoner is entitled to reasonable measure to prevent a risk of harm, he "is not entitled to the best care possible"). On this record, in which Rainey was continually receiving treatment and accommodations for his pain, it would be unreasonable to infer that Dr. Martin failed to exercise judgment ordering the MRI when he did.

This undisputed evidence, paired with Dr. Martin's undisputed efforts to identify the source of, and lessen, Rainey's pain, would simply not permit a reasonable trier of fact to conclude that Dr. Martin abandoned his professional judgment in treating Rainey's back pain. Accordingly, the court will grant defendant's motion, enter judgment in his favor, and close this case.

## ORDER

IT IS ORDERED that:

1. Defendant Dr. Martin's motion for summary judgment (dkt. #42) is GRANTED.

2. The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 12th day of March, 2020.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge